# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENISE D'ALESSANDRO<br><br>*Plaintiff*,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>*Defendant*. | Civil Action No:<br>18-cv-01290 (PGS)(LHG)<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Defendant's motion to dismiss Count VI of the Complaint, alleging Defendant's violation of the Consumer Fraud Act, N.J.S.A. 56:8-2, pursuant to Fed. R. Civ. P. 12(b)(6).

I.

Plaintiff Denise D'Alessandro obtained a mortgage loan evidenced by a note on March 11, 2015 (hereinafter collectively referred to as the "Loan"). (Compl. ¶8). She defaulted on the Loan on December 1, 2013. (Compl. ¶20). Defendant Ocwen Loan Servicing, LLC ("Ocwen") is the servicer of the Loan. (Compl. ¶3).

On November 5, 2014, Wells Fargo Bank, N.A., as Indenture Trustee under the Indenture relating to IMPAC CMB Trust Series 2005-6, initiated foreclosure proceedings against Plaintiff's home based upon a mortgage loan in the Superior Court of New Jersey, Monmouth County, Chancery Division, (Id. ¶21).

1

- On August 2, 2017, Metrick sent correspondence to Ocwen captioned "Notice of Error under 12 CFR 1024.35(b)(11)" (NOE/RFI #1). Additionally he requested information related to the servicing of the Loan including a copy of any call notes from Ocwen's August 2, 2017 telephone call with Metrick and explanation as to why a paystub was requested for a future date. (Id. ¶30, Ex 5).

- On August 10, 2017 Ocwen sent written notice to Plaintiff thorugh Metrick stating that the Application was still incomplete ("Incomplete Notice #4). Ocwen requested: "Borrower's paystubs for the second job were not received. Please provide two consecutive paystubs dated in the last 90 days that reflect YTD income figures." (Id. ¶32, Ex. 7)

- On August 11, 2017, Plaintiff, through Metrick, sent the paystubs requested through Incomplete Notice 3 and 4 to Ocwen. Ocwen acknowledged receipt. (Id. ¶¶33-34, Ex. 8).

- On August 14, 2017, Ocwen sent written notice to Plaintiff stating that the Application was still incomplete ("Incomplete Notice #5). Ocwen requested "Borrower's paystubs for the second job." (Id. ¶35, Ex. 9)

- On August 15, 2017, Ocwen sent written notice to Plaintiff stating that the Application was still incomplete ("Incomplete Notice #6). Ocwen asked for additional information regarding Plaintiff's employment. (Id. ¶36, Ex. 10).

- On August 17, 2017 Metrick spoke with Ocwen's representative and was advised as to the specific information that was required to satisfy Incomplete Notice #6. (Id. 37).

- Accordingly, on August 22, 2017, Plaintiff, through Metrick, sent correspondence to Ocwen captioned "Request for Information Pursuant to Section 1024.36 pf Regulation X Notice of Error Pursuant to Section 1024.35(b)"(NOE/RFI #2) ( Id. 38 Ex 11). Metrick attached a letter of explanation providing all of the information requested by the representative. (Id. 39). In this letter, Plaintiff also requested information related to the servicing of the Loan, including a copy of any call notes from Ocwen's August 17, 2017 telephone call to Metrick and an updated payoff quote for the Loan. (Id. ¶40).

- On August 23, 2017, Plaintiff, through Metrick, sent correspondence to Ocwen captioned "Notice of Error under 12 CFR 1024.35(b)(11)" (NOE/RFI #3) stating that Ocwen committed an error related to the servicing of the Loan by requesting pay stubs through Incomplete Notice #4 that were confirmed with the representative on August 17, 2017 via telephone to have already been in Ocwen's possession prior to sending such letter and for then requesting the same paystubs yet against less that 48 hours later. (Id. 42, Ex. 13). Plaintiff also enclosed a copy of pay stubs with the NOE which had been previously submitted. (Id. ¶43).

- On August 24, 2017, Ocwen sent correspondence in response of NOE/RFI #1 though which Ocwen allegedly refused to provide the requested call notes claiming that "we are unable to process your request to provide [Plaintiff] with the call transcripts, as these are for internal purposes only." (Id. ¶45).

- On August 24, 2017, Ocwen sent written notice to Plaintiff stating that the application was incomplete (Incomplete Notice #7). In this notice Ocwen requested the same information that were requested in Notices #3,4,5, which the representative confirmed Ocwen was in possession of in August 23, 2017. (Id. ¶46, Ex. 13).

- On August 25, 2017, Ocwen sent written notice to Plaintiff stating that the application was still incomplete (Incomplete Notice # 8). In this notice Ocwen requested the same information they had requested in notices # 3, 4, 5, 7. (Id. ¶47 Ex. 13)

- On August 30, 2017 Ocwen sent written notice to Plaintiff stating that the Application was still incomplete (Incomplete Notice #9) Ocwen requested the same information requested in notices #3, 4, 5, 7 and 8. (Id. ¶50 Ex. 19)

- On September 8, 2017, Ocwen sent written notice to Plaintiff stating that the Application was still incomplete (Incomplete Notice #10) requesting additional information regarding "the Profit and Loss statement provided." (Id. ¶51, Ex. 20). Plaintiff supports that the documents requested were received on June 23, 2017. (Id. ¶52).

- On September 15, 2017, Ocwen sent correspondence in response to NOE/RFI #2 and #3 thought which Ocwen again refused to provide the call notes requested. (Id. 53, Ex. 21). Ocwen also stated that they received financials on August 23, 2017, August 24 and August 29, "[h]owever the borrower's paystubs were still missing." (Id. ¶54, Ex. 20). Plaintiff supports that the financials consisted of paystubs. (Id.)

- On September 20, 2017, Ocwen sent a copy of the payoff quote of the Loan that Plaintiff requested on August 22, 2017 via NOE #2. (Id. ¶55, Ex. 22)

- On September 22, 2017, Ocwen sent written notice to Plaintiff stating that the Application was still incomplete ("Incomplete Notice #11") requesting the same information as Notice #10. (Id. ¶56, Ex. 23).

- On September 25, 2017, Plaintiff, through Metrick, submitted a letter of explanation providing the requested clarification for the profit and loss statement. (Id. ¶57, Ex. 24).

- On September 26, 2017, Ocwen sent another notice that the Application was incomplete. ("Incomplete Notice #12) requesting the same information that were requested in notice #10 and 11. (Id. ¶59, Ex. 25).

- On October 3, 2017, Plaintiff, through Metrick, sent correspondence to Ocwen captioned "Notice of Error under 12 CFR §1024.35(b)(11)—DUAL TRACKING" ("NOE/RFI #4"), stating that Ocwen committed an error related to the servicing of the Loan by failing "to exercise reasonable diligence in obtaining the documents and information necessary to complete the review of the [Plaintiff's Application] in violation of 12 C.F.R. §1024.41(b)" and demanding that Ocwen immediately perform a review of the Application. (Id. ¶60, Ex. 26).

- On October 17, 2017, Ocwen sent written notice to Plaintiff stating that the Application was still incomplete ("Incomplete Notice #13") and requesting the same information as Incomplete Notice #10, 11, and 12: (Id. ¶62, Ex 28).

- On or about October 19, 2017, Plaintiff, through Metrick, sent correspondence to Ocwen captioned "Request for Information Pursuant to 12 CFR § 1024.36 and Notice of Error under C.F.R. § 1024.35" (NOE/RFI #5) stating that Ocwen committed an error related to the servicing of the Loan by being "in possession of a completed application for more than 30 days" and having failed to review the same. (Id. 63, Ex. 29). Plaintiff, through Metrick, again advised Ocwen that on October 12, 2017 and October 19, 2017, the representative stated that Ocwen had been in possession of any and all requested information to complete the Application since prior to September 8, 2017 (Id. ¶64).

- On October 25, 2017, Ocwen sent correspondence in response to NOE/RFI #4 and directly contradicting the previous statements by the representative (Id. ¶66, Ex. 31).

- On November 8, 2017 Ocwen sent correspondence stating that the Application was still incomplete ("Incomplete Notice #14"). Ocwen, through Incomplete Notice #14, requested the same information as Notice #10, 11, and #12:"Please send a copy of your most recent signed and dated quarterly profit and loss statement documenting your self-employment income.(Additional information is needed regarding the Profit and Loss statement provided. (Id. ¶67, Ex. 32).

- Plaintiff alleges that to the time the Complaint was filed, Ocwen still refused to review Plaintiff's application for loan modification. (Id. ¶68).

On January 30, 2018, Plaintiff filed a Complaint against Ocwen alleging the following counts: (1) Violations of 12 C.F.R. §1024.41(b); (2) violation of 12 C.F.R. 1024. 24(c); (3)

5

Violations of 12 C.F.R. §1024.36; (4) Violation of 12 C.F.R. §1024.35(e); (5) 15 U.S.C. 1692; and (6) Violation of the NJCFA, N.J.S.A. §56:8-2.

Defendant now moves for the dismissal of the New Jersey Consumer Fraud Act (NJCFA) claim (Count VI), pursuant to Fed. R. Civ. P. 12(b)(6).

II.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The requirements of Rule 8 apply even where the Rules command particularity, as in the pleading of fraud under Rule 9(b). *In re Westinghouse Sec. Litig.*, 90 F.3d at 702. Therefore, where alleging fraud, Plaintiffs must state the circumstances constituting fraud with particularity, but must still endeavor to make their allegation clear and concise. "Pleadings containing collectivized allegations against 'defendants' do not suffice." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999).

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Second, the court must "review[] the

complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

Within the consumer fraud count, Plaintiff alleges that Ocwen implemented an inconceivable commercial practice by its "knowing concealment, suppression and omission of material facts" regarding the loan modification application.

More specifically Plaintiff alleges that "Ocwen's actions, in continuously disregarding federal guidelines requiring them to exercise reasonable diligence in reviewing the Plaintiff's loan modification application, is an unconscionable act under the Consumer Fraud Act." (Id. ¶159). "Ocwen's actions, in refusing to review the Application and causing Wells Fargo to continue prosecuting the Foreclosure against the Plaintiff, is [another] unconscionable act under the Consumer Fraud Act." (Id. ¶160). As to damages suffered as a result of Defendant's conduct, Plaintiff states that she "has been caused to suffer from severe emotional distress and severe anxiety . . ." As a result, Plaintiff seeks treble damages. (Id. at ¶162). In order to prevail on a consumer fraud claim, "'1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Petinga v.*

*Sears, Roebuck & Co.*, No. 05-5166, 2009 U.S. Dist. LEXIS 48693 (D.N.J. June 9, 2009) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557, 964 A.2d 741 (2009) (citations omitted)).

On review of the first factor, unlawful conduct is defined as "affirmative acts, knowing omissions, and regulation violations." N.J.S.A § 56:8-2. That statute reads:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

"[T]he reach of the [NJCFA] is intended to encompass only consumer oriented commercial transactions involving the marketing and sale of merchandise or services." *Id.* (citing *Del Tufo v. Natl'l Republican Senatorial Comm.*, 591 A.2d 1040, 1042 (N.J. Super. Ct. Ch. Div. 1991)). Defendant argues that Plaintiff never bought any merchandise or real estate from Ocwen, meaning that Plaintiff, as a debtor, is unable to bring a claim against Ocwen under the NJCFA. However, the Courts have interpreted this provision broadly. Previously it has been held that "misrepresentation regarding mortgage modifications fall within the NJCFA since they are made in connection with the 'subsequent performance' of a mortgage under a statute." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 594 (D.N.J. 2016); In *Laughlin v. Bank of Am., N.A.*, this Court held that

> Considering the 'broad legislative intent evident from the language and the policy goals of the [NJ]CFA,' it would be disingenuous to hold that a servicer would be free from the ramifications of violating the NJCFA if it engaged in unlawful conduct while participating in a loan modification. Just as fraud, deception, and other similar types of conduct are not justified in forming a loan, so are they not

8

permitted in attempts to modify a loan. Therefore, a loan servicer's business practices during the loan modification process are covered by the CFA.

2014 U.S. Dist. LEXIS 79441, 2014 WL 2602260, at *6 (D.N.J. June 11, 2014) (quoting *Lemelledo v. Benefit* Mgmt. Corp., 150 N.J. 225, 264, 696 A.2d 546 (1997)). Although this proposition is an exceptionally broad reading, this claim survives based upon Ocwen's alleged actions during a loan modification process.

The showing of an unreasonable business practice also entails a lack of good faith, fair dealing, and honesty." "The capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). Mere dissatisfaction does not constitute consumer fraud." *In re Van Holt*, 163 F.3d 161, 168 (3d Cir. 1998). Here, the loan modification actions, as described in the Complaint, may possibly show a pattern to delay or thwart a process. The facts at a minimum could show a lack of good faith.

The second prong of the consumer fraud standard is to show an ascertainable loss. The Plaintiff, as noted above, asserts a claim for emotional distress. The Consumer Fraud Act does not authorize such damages. Generally, ascertainable loss is limited to "money as property, real or personal." N.J.S.A. 56:8-19. *Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135, 144 (App. Div. 2005). Here, a fair reading of the Complaint demonstrates that she has paid for legal fee, postage, and other expenses, in pursuing the loan modification process. This is adequate to show an ascertainable loss at this juncture.

The last point is that Plaintiff must show a causal connection between the unconscionable practice and the ascertainable loss. Here the attorney's fees and costs associated with the ongoing loan modification process and the failure to straighten out the process are causally related.

Plaintiff alleged unconscionable acts, and ascertainable damages, though limited to fees and expenses, which were accrued in pursuing the loan modification, thus establishing a

9

connection. Plaintiff has provided sufficient facts to survive a motion to dismiss specifically as to Count VI.

It is to be noted that even if Plaintiff ultimately failed to establish an ascertainable loss, and recover treble damages, she "could nonetheless demonstrate a violation of the CFA and, by doing so, recover attorney's fees and costs." *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132, 141 (3d Cir. 2014). *Romano v. Galaxy Toyota*, 399 N.J. Super. 470, 945 A.2d 49, 58 (N.J. Super. Ct. App. Div. 2007) ("Even though plaintiff unsuccessfully proved the existence of an ascertainable loss, and was unable to recover treble damages, plaintiff can recover reasonable attorney's fees and costs because defendant committed an unlawful practice."). *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 454, 647 A.2d 454 (1994) ("For the sake of completeness we add that a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages."). For those reasons, the Court finds that the motion to dismiss Count VI should be denied at this time.

## ORDER

THIS MATTER having been opened to the Court by Defendants' motions to dismiss Plaintiff's Second Amended Complaint [ECF No. 7] for failure to state a claim; and the Court having fully considered the submissions in support thereof, and any opposition thereto; and having considered the arguments of the parties; and for good cause shown;

IT IS on this 23 day of May, 2018,

**ORDERED** that Defendants' motions to dismiss (ECF No. 7) is DENIED.

_____
PETER G. SHERIDAN, U.S.D.J.